**ORIGINAL**

# In the United States Court of Federal Claims

Pro Se
No. 14-1079C
Filed: September 28, 2015

|  |  |
|---|---|
| THOMAS H. PATTON,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>　　　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

28 U.S.C. § 1500; Substantially
the same operative facts;
28 U.S.C. § 1631.

**FILED**

SEP 28 2015

U.S. COURT OF
FEDERAL CLAIMS

*Thomas H. Patton*, Levittown, NY, plaintiff, *pro se*.

*Agatha Koprowski*, Trial Attorney, with whom were *Benjamin Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, and *Ilene S. Kreitzer*, Counsel to the U.S. Merchant Marine Academy, Kings Point, NY, for Defendant.

### OPINION AND ORDER

**Kaplan, Judge.**

　　This case is currently before the Court on the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Rules of the Court of Federal Claims (RCFC) 12(b)(1) and 12(b)(6). The pro se plaintiff, Thomas H. Patton, contends that the United States Department of Transportation, which operates the United States Merchant Marine Academy (the "Academy"), breached an agreement it allegedly entered with him that set forth certain terms for his continued

enrollment at the Academy. Mr. Patton alleges that as a result of this breach he was improperly expelled and/or disenrolled from the Academy. Among other forms of relief, he seeks compensatory damages and reinstatement as a midshipman.

Mr. Patton's breach of contract claim was originally brought as part of a multi-count complaint he filed against the Department of Transportation, one of its contractors (the Patten Clinic), and several DOT employees. Compl., Patton v. U.S. Dep't of Transp., No. 2:13-CV-05646 (E.D.N.Y. Oct. 15, 2013), ECF No. 1. On August 20, 2014, however, the district court in that action ruled that it lacked jurisdiction over Mr. Patton's contract claim because the damages requested exceeded the $10,000 threshold for the district court's exercise of concurrent jurisdiction under the Tucker Act. Decision Tr. at 10-11, Patton, No. 2:13-CV-05646, ECF No. 30; Order, Patton, No. 2:13-CV-05646, ECF No. 27. At plaintiff's request, the district court transferred the contract claim to this Court pursuant to 28 U.S.C. § 1631. Order, Patton, No. 2:13-CV-05646, ECF No. 29.

The United States subsequently filed a motion to dismiss the complaint under Rules 12(b)(1) and/or 12(b)(6) of the Rules of the Court of Federal Claims. Among other things, the United States argued that this Court lacked Tucker Act jurisdiction over Mr. Patton's contract claim because, as a member of the United States Naval Reserve, any rights bestowed upon him with respect to his enrollment in the Merchant Marine Academy were based upon statute and regulation, and not upon contract. Def.'s Mot. to Dismiss 6-7, ECF No. 4. It also argued that Tucker Act jurisdiction would not lie even if Mr. Patton could demonstrate that he entered a binding contract with the United States because the contract could not be fairly interpreted as providing a right to damages for its breach. Id. at 7.

On May 20, 2015, after the parties completed briefing on the government's motion to dismiss, the Court requested supplemental briefing on the issue of whether the jurisdictional bar set forth in 28 U.S.C. § 1500 was applicable. Order for Suppl. Briefing, ECF No. 10. Pursuant to that provision, the United States Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." 28 U.S.C. § 1500.

The parties have now filed their supplemental briefs concerning the applicability of 28 U.S.C. § 1500. For the reasons set forth below, the Court concludes that the jurisdictional bar set forth in that statute applies here. Accordingly, this case must be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

### I.  The Present Complaint

Mr. Patton alleges that on June 8, 2011, while a midshipman at the Academy, he entered what he characterizes as an "agreement" setting forth the conditions under which he would be permitted to complete his studies and graduate. Compl. ¶ 10; Compl. Ex. B. The agreement, he contends, is set forth in a letter to him of that date from the Superintendent of the Academy. The letter (entitled "TERMS OF PROBATION") conveyed the Superintendent's decision after "careful review of [Mr. Patton's] academic record" that he would be subject to certain "additional academic terms in regard to [his] Deferred Graduate status." Compl. Ex. B. Among other things, the letter required that by November 1, 2011, Mr. Patton complete 56 sea days, perform 240 hours of extra duty, and take a Humanities class. Id.

Mr. Patton alleges that when he returned to the Academy in early June of 2011, he "made extensive efforts to arrange for sea duty, including making numerous phone calls to two different Academy Training Representatives ('ATR') to arrange for sea duty." Compl. ¶ 12. He further claims that the ATRs informed him that he could not participate in sea duty until he was cleared for such by the Patten Clinic. Id.[1] Mr. Patton alleges that he was examined at the Patten Clinic on June 14, 2011 by Dr. Ronald Feinstein, who checked boxes on the medical examination form indicating that Mr. Patton was "recommended competent" and was "qualified for service." Id. ¶ 14; Compl. Ex. D. Mr. Patton alleges that Dr. Feinstein nonetheless advised him that he was not fit for sea duty because he had high blood pressure. Compl. ¶ 15.[2]

On June 28, 2011, Mr. Patton was verbally directed to complete the 240 hours of extra duty required by the June 8, 2011 letter. Id. ¶ 20. He met the requirement by assisting in the new student indoctrination program on campus through late August. Id. ¶ 21.

Thereafter, Mr. Patton alleges he again made efforts to contact an ATR to arrange his sea duty, but was told by the Academy's dean that he had not been cleared by the Patten Clinic, and that he was still required to secure such clearance in order to perform sea duty. Id. ¶¶ 22-23. In an effort to secure clearance from the Patten Clinic, Mr. Patton underwent blood pressure testing on September 23, 2011, the results of which, he contends, showed that he was fit for sea duty.

---

[1] According to Mr. Patton, the Patten Clinic is a health clinic that is "owned, operated and/or maintained by the United States Department of Transportation" and is "responsible for the overall management of the medical care, dental care and emergency services for the officers of the United States Merchant Marine." Compl. ¶ 9.

[2] Mr. Patton's medical records were reviewed the same day by the Bureau of Medicine and Surgery of the Department of the Navy ("BUMED"), which found that he did not meet established physical standards due to a history of lumbar degenerative disc disease. Compl. ¶ 16; Compl. Ex. E. It recommended that Mr. Patton receive a waiver of physical standards, which Mr. Patton alleges meant that BUMED had found him physically fit. Compl. ¶ 17.

Id. at ¶ 26; Compl. Ex. H. Mr. Patton also alleges that an October 4, 2011 medical consultation report (which was not made available to him) stated that he was "ok to go to see [sic]." Compl. ¶¶ 22-28; Compl. Ex. I.

According to Mr. Patton, at some point thereafter, Dr. Feinstein referred him for testing for sleep apnea, notwithstanding that he was not suffering from any symptoms of sleep apnea. Compl. ¶ 29; Compl. Ex. J. He ultimately underwent such testing on November 21, 2011, and was reported to have shown "no significant sleep disordered breathing." Compl. Ex. J.

In the meantime, by letter of November 9, 2011, the Academy's Interim Superintendent and Academic Dean (Dr. Shashi Kumar) advised Mr. Patton that the Academy had decided to disenroll him upon "careful review of [his] academic record" because he had failed to meet the requirements for graduation by November 1, 2011, as specified in the June 8, 2011 Terms of Probation letter. Compl. ¶ 31; Compl. Ex. K. Mr. Patton requested that Dr. Kumar reconsider his decision but Dr. Kumar allegedly refused to do so. Compl. ¶ 34.

Mr. Patton contends that "[a] key basis for Kumar's decision to disenroll [him] was his belief that Plaintiff waited until September 9, 2011, to first contact an ATR to arrange for sea duty." Id. ¶ 32. He alleges that this belief was incorrect because he had made "extensive efforts to arrange for sea duty" but had been informed by the ATRs that he needed clearance from the Patten Clinic. Id. Mr. Patton claims that "[e]ven though Kumar could have easily verified the inaccuracy of his belief, he never did so and stood by his sole decision to disenroll Patton, even though it was based on erroneous information." Id. ¶ 33. He further alleges that "the only reason that [he] did not complete his sea project was because of the interference and delays caused by Defendants, including the Patten Clinic, the Academy, and the members of the Academy's staff." Id. ¶ 36. In particular, he alleges that the Patten Clinic deliberately

5

misdiagnosed him as suffering from high blood pressure and sleep apnea in order to preclude him from completing his sea duty and meeting the conditions set for his graduation. Id. ¶¶ 37-42.

According to Mr. Patton, the actions described above prevented him from abiding by certain terms of the alleged agreement, and the Academy's decision to expel/disenroll Mr. Patton constituted a breach of that agreement. Id. ¶¶ 53-55. He seeks damages for injuries he sustained as a result of the alleged breach, as well as reinstatement to the Academy. Id. at 10.

## II. The District Court Action

As described above, Mr. Patton initiated an action in the United States District Court for the Eastern District of New York on October 15, 2013. Compl., Patton, No. 2:13-CV-05646, ECF No. 1. The defendants named in the district court complaint were the Department of Transportation, the Academy, the Patten Clinic, Dr. Feinstein, Dr. Kumar, and John Does 1-10, identified as "agents, employees and/or officers of the United States Department of Transportation and/or the Academy." The factual allegations in the complaint are largely the same as those made in the complaint before this Court, described above. Id. ¶¶ 1-40.

The complaint included six counts, including: (1) violation of procedural due process under the Fifth Amendment; (2) violation of substantive due process under the Fifth Amendment; (3) breach of contract; (4) interference with contract; (5) fraud; and (6) breach of fiduciary duty. Id. ¶ 55-84. The government moved to dismiss Mr. Patton's complaint in its entirety. As discussed above, the district court concluded that Mr. Patton's claim for breach of contract was within the exclusive jurisdiction of the Court of Federal Claims, and granted in part and denied in part the government's motion as to Mr. Patton's other claims. See Order, Patton, No. 2:13-CV-05646, ECF No. 27. After the district court transferred Mr. Patton's breach of

contract claim to this Court, Mr. Patton filed an amended complaint in the district court. Am. Compl., Patton, No. 2:13-CV-05646, ECF No. 31; Compl. ¶ 3. As of the date of this opinion, the district court case is still pending.

## DISCUSSION

### I. Standards for Motion to Dismiss Pursuant to RCFC 12(b)(1)

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It is well established that complaints that are filed by pro se plaintiffs, as this one is, are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004), aff'd, 98 Fed. App'x 860 (Fed. Cir. 2004).

### II. Tucker Act Jurisdiction

The Court of Federal Claims has jurisdiction under the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act also grants this court jurisdiction to grant equitable and declaratory relief, but only when such relief is "an incident of and collateral to" a money judgment. Id. § 1491(a)(2); Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992).

The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), but it does not confer any substantive rights on a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

### III.     28 U.S.C. § 1500

As noted above, 28 U.S.C. § 1500 provides that the United States Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." Two inquiries are thus required to determine whether § 1500 applies: "(1) whether there is an earlier-filed suit or process pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are for or in respect to the same claim(s) asserted in the later-filed Court of Federal Claims action." Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (quotations omitted). With respect to the second inquiry, the Supreme Court has held that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1731 (2011). "[I]t is irrelevant whether the relief sought in the two co-pending suits is the same or different (e.g., injunction versus money damages). All that matters is that the two suits be based

on 'substantially the same operative facts.'" Ministerio Roca Solida v. United States, 778 F.3d 1351, 1354 (Fed. Cir. 2015) (citation omitted) (quoting Tohono, 131 S. Ct. at 1731).

### IV. Application of Standards

#### A. Pending Earlier-Filed Suit

As noted, in order to determine whether section 1500 bars this suit, the Court must first determine whether there was an earlier-filed suit or process pending in another court at the time this case was filed. In this case, that requirement has been met.

Pursuant to 28 U.S.C. § 1631, a claim that is transferred "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred." The court of appeals has held that this provision means that "the court receiving a transferred claim must treat the claim as if it were filed at the same moment the claim was filed originally in the first court." Griffin v. United States, 590 F.3d 1291, 1293 (Fed. Cir. 2009) (citing United States v. County of Cook, 170 F.3d 1084, 1090 (Fed. Cir. 1999)). It has further held that if claims are filed simultaneously in both the district court and the Court of Federal Claims, then the claim filed in the district court will be treated as "pending" for purposes of section 1500. Id. "Therefore, if a plaintiff files multiple related claims in district court, and the court transfers one of those claims to the Court of Federal Claims, the original claims are 'pending' at the time the transferred claim is considered filed, and § 1500 may deprive the Court of Federal Claims of jurisdiction over the transferred claim." Id.

#### B. Nature of the Claims

The second inquiry for the Court—whether the claims asserted in the earlier-filed case are "for or in respect to the same claim(s) asserted" in this action—must also be answered in the affirmative. The complaint in the district court and complaint filed here clearly involve

9

"substantially the same operative facts." See Tohono O'Odham Nation, 131 S. Ct. at 1731. In both cases, Mr. Patton alleges that he was prevented from meeting the conditions for graduation set forth in the June 8, 2011 letter because of the actions of the United States or "persons acting or professing to act, directly or indirectly under the authority of the United States"—i.e., the Patten Clinic, Dr. Feinstein, Dr. Kumar, and the other unnamed Academy employees who are named as defendants in the district court. He claims in both complaints, and in virtually the same language, that these wrongful actions led to the same injury—his disenrollment/expulsion from the Academy. Indeed, in the district court action he has characterized the very same conduct that is here claimed to constitute a breach of contract as either tortious, a breach of fiduciary duty, or unconstitutional under the Fifth Amendment. See Am. Compl., Patton, No. 2:13-CV-05646, ECF No. 31.

In short, in this case, Mr. Patton has "filed two nearly identical complaints that, at best, repackage[] the same conduct into two different theories." Cent. Pines Land Co. v. United States, 697 F.3d 1360, 1364-65 (Fed. Cir. 2012). Thus, because section 1500's applicability depends upon whether the operative facts overlap, and not on whether the two suits involve the same causes of action or requests for relief, Mr. Patton's claims in the district court are "for or in respect to the same claim(s) asserted" in this Court. Therefore, 28 U.S.C. § 1500 applies and this Court lacks jurisdiction over Mr. Patton's breach of contract claim.

## V. Request for Transfer

Mr. Patton has requested that this Court transfer the case back to the district court if it concludes that section 1500 is applicable. Pursuant to 28 U.S.C. § 1631, where it is in the interest of justice, a court may transfer a case over which it lacks jurisdiction "to any other such court in which the action . . . could have been brought at the time it was filed." In this case,

however, the district court has already concluded (correctly) that it lacked jurisdiction over Mr. Patton's contract claim. Because the district court is not a court in which this suit "could have been brought at the time it was filed," and because any transfer back to that court would be futile, Mr. Patton's request for a transfer must be denied.

## CONCLUSION

The government's Motion to Dismiss pursuant to RCFC 12(b)(1) is **GRANTED** and this case is **DISMISSED** without prejudice. Each side shall bear its own costs. The Clerk of the Court is directed to enter judgement accordingly.

**IT IS SO ORDERED.**

_____
ELAINE D. KAPLAN
Judge